Mr. Brian T. Burke Attorney at Law Post Office Box 588 Bentonville, AR 72712
Dear Mr. Burke:
I am writing in response to your request, pursuant to A.C.A. §25-19-105(c)(3)(B) (Supp. 2003), for an opinion on whether your decision, on behalf of the Bentonville Advertising and Promotion Commission, to withhold release of a memorandum created at the Commission's behest is consistent with the provisions of the Arkansas Freedom of Information Act ("FOIA"), codified at A.C.A. §§ 25-19-101 to -109 (Repl. 2002 and Supp. 2003).
Specifically, you note that on January 19, 2005, the Commission, after an executive session, suspended its president without pay pending an investigation. While in executive session the Commissioners reviewed certain documents which formed the basis for its decision to suspend the President. These documents, which consisted of certain financial records, were produced by the Commission in response to FOIA requests made by news organizations. After the January 19 meeting, the Commission's chairperson appointed an "ad hoc" committee consisting of one Commission member and two other members of the community. You state that the ad hoc committee was appointed for the purpose of "gathering additional information . . . and for the purposes of making a recommendation to the Commission as to whether formal investigation should consist of an internal or forensic audit, a criminal investigation by an appropriate law enforcement agency, or both."
You note that the committee met on February 8, 2005 and reviewed some five hundred pages of documents, as well as a synopsis of events provided by the bookkeeper at the Advertising and Promotion office. The bookkeeper also attended the committee's meeting to answer questions about the documents reviewed. You state that after the meeting, the committee reduced its thoughts, observations and recommendations to a written memorandum.
In the meantime, the President retained an attorney who requested copies of all documents reviewed by the committee and any reports it generated. You state that the committee's memorandum was then sent to you and you provided it to the President's attorney on February 11, 2005.[1] On February 14, the President resigned. On February 16th, you received an FOIA request from a reporter requesting "a copy of any written, electronic or otherwise report made by the Advertising and Promotion Commission's ad hoc committee on their activities. This will include any preliminary or final report or any other matter that have been compiled or otherwise created for the Advertising and Promotion Commission that is a result of the suspension of [the President]." The reporter also notes that she is faxing a copy of the request to the AP's office.
You state that as a custodian to whom the request has been made, you have made a determination that the memorandum falls with the definition of a "job performance record" under A.C.A. § 25-19-105(c)(1) and is exempt from disclosure because it does not "form the basis of any suspension or termination, and that the document's ability to form the basis for such action is rendered moot by the president's resignation prior to the consideration of the memorandum by the Commission." You have informed the president's attorney of this decision.
Although you have posed several specific questions for my review and opinion, I must note that my statutory duty under A.C.A. §25-19-105(c)(3)(B)(i) is not to address particular questions posed by custodians, subjects and requesters, but is merely to "stat[e] whether the decision is consistent with [the FOIA]." See Ops. Att'y. Gen.2004-219; 2003-135 and 2002-191.
RESPONSE
Although I have not reviewed the particular record in question and although there may be other factual issues of which I have not been apprised, it is my opinion, from the facts presented, that your decision is generally consistent with the FOIA. The memorandum in question, because it post-dates the suspension, does not appear to have "form[ed] a basis" for the decision to suspend the employee. In addition, because you state that the employee resigned, there is no indication that the memorandum formed the basis for a decision to terminate the employee. Resignation is not a triggering event for the release of job performance records.
The questions presented by your request are whether the report constitutes an "employee evaluation or job performance record" under A.C.A. § 25-1-105(c)(1) and if so, whether the document is properly withheld from public disclosure under the applicable test for release of such records.
This office has consistently taken the position that any records that were created at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. See, e.g., Ops. Att'y Gen. Nos.2004-260; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; 93-055. The facts you recite indicate that the ad hoc committee was appointed by the Commission and was charged with "gathering additional information . . . related to possible misconduct . . . and making a recommendation to the Commission." Under these facts it is accurate to say that the report in question was generated at the request of the Advertising and Promotion Commission. In addition, I assume from your recitation of the committee's charge, that the report details the performance or lack of performance of the President with regard to a specific incident or incidents. I have stated previously that records created by or at the behest of the employer in connection with the investigation of an employee constitute "employee evaluation/job performance records" within the meaning of the FOIA. See e.g., Ops. Att'y Gen. 2003-381; 2003-364; 2003-201; 2002-085; 2002-055; 2001-276; 2001-217; 2001-153; 2001-144. In my opinion, therefore, although I have not reviewed the memorandum in question, it in all likelihood constitutes a "job performance record" for purposes of the FOIA. The fact that the ad hoc committee may be acting in an "advisory capacity" does not, in my opinion, affect the memorandum's status as a job performance record, at least where the record was created at the behest of the employer.[2]
Once it is determined that the record in question is in fact a job performance record for purposes of the FOIA, the applicable test for disclosure of such records must be reviewed. In this regard, subsection (c)(1) of A.C.A. § 25-19-105 provides as follows:
 (c)(1) Notwithstanding subdivision (b)(12) of this section, all employee evaluation or job performance records, including preliminary notes and other materials, shall be open to public inspection only upon final administrative resolution of any suspension or termination proceeding at which the records form a basis for the decision to suspend or terminate the employee and if there is a compelling public interest in their disclosure.
You have indicated that the president was suspended. Suspension or termination is a prerequisite for the release of employee evaluation or job performance records. See e.g., Ops. Att'y Gen. 2001-246; 2000-224; 98-210; 98-188; 97-176; and 97-063. You have not indicated, however, whether the suspension has been finally resolved. This is also a necessary prerequisite to the release of such records. Op. Att'y Gen.95-326. Although you have noted that the employee in question resigned, I am not aware of whether the employee has any further avenues of administrative appeal concerning the suspension despite his resignation. If any avenues of administrative appeal are available to the employee, this element of the applicable test may not yet have been met. See Op. Att'y. Gen. 2003-381 and 2004-212. If no further administrative appeals are available, however, I will note that a resignation subsequent to a suspension has no impact on the question of whether there has been a final administrative resolution of the suspension. Op. Att'y. Gen.2002-158. That is, the fact that the employee resigns after the initial suspension does not keep the suspension from being "final" for purposes of the release of job performance records and such records may be released if the remainder of the test for release of such records is met. Id.
The second element of the test for the release of job performance records, however, is that the records "form a basis" for the decision to suspend or terminate the employee. This prong of the applicable test has not been met in my opinion. The question of whether particular records "form a basis" for the decision to suspend or terminate is a question of fact. Op. Att'y. Gen. 2003-091. It has been stated that this prong of the test "is generally interpreted to mean that the records in question reflect or detail the incidents or conduct that led to the suspension.See, e.g., Op. Att'y Gen. No. 2002-158, citing Op. Att'y. Gen. 2001-144. It has also been stated that this requirement is "designed to ensure . . . that disclosure will be made only when [records] are relevant to employee performance sufficiently deficient to merit suspension or termination." Watkins and Peltz, The Arkansas Freedom of Information Act
(4th ed. 2004) at 201. Although these statements might be inclusive enough to entail records created after the applicable suspension, I have previously rejected such an interpretation. In Op. Att'y. Gen. 2003-381, at issue was a factual scenario similar to the one you describe. I stated:
 In order for a record to have "formed a basis" for a suspension, it must have either been created prior to the suspension, or must simply recite the reasons for the suspension. See Op. Att'y Gen. No. 2003-091.[3] Some of the records that you have provided were created after the suspension while the investigation was continuing, but before the employee resigned. Some of these records may go beyond simply reciting the reasons for the suspension. Any such record (i.e., any records that was created after the suspension and that goes beyond simply reciting the reasons for the suspension) cannot, in my opinion, be deemed to have "formed a basis" for the suspension and therefore would not satisfy the second condition above. Such records cannot be released.
 Id. at 6.
In my opinion a similar conclusion obtains with regard to the memorandum at issue. The employee was suspended prior to the creation of the memo. It cannot, therefore, be deemed to have "form[ed] a basis" for the decision to suspend the employee. In addition, because the employee resigned, the memorandum did not form a basis for a decision to terminate the employee. Resignation is not a triggering event for the release of job performance records. See e.g., Ops. Att'y Gen. 2004-219; 2001-184; 99-026 and 97-079. As I recently stated in Op. Att'y Gen. 2004-219
"[t]his office has previously opined on numerous occasions that this should be the result even if the employee voluntarily resigned in the face of a disciplinary challenge. See, e.g., Ark. Ops. Att'y Gen. Nos.2002-235; 2001-246; 98-188; 97-063." Id. at 3. In the same opinion, however, I noted a statement by one of my predecessors to the effect that: "a resignation tendered in the face of a more certain, impending termination could be deemed to be a forced, coerced or constructive termination for purposes of A.C.A § 25-19-105(c)(1)." Id. citing Op. Att'y Gen. No. 97-063.
I have not been provided with any facts as to the nature of the resignation and whether it was tendered to avert an impending decision of the employer to terminate the employee in question. Absent any evidence to this effect, I am constrained to conclude that your decision is consistent with the FOIA because the document in question did not "form a basis" for a decision to suspend or terminate the employee. Although this result may seem overly technical, I am not at liberty to disregard the express language of the statute requiring job performance records to "form a basis" for a suspension or termination prior to being released. The applicable language does not authorize release of records "relating to," or in some other way "connected to" a suspension or termination. The records must "form a basis" for the decision to suspend or terminate. As such, I must conclude, absent facts of which I have not been made aware, that your decision is generally consistent with the FOIA.
That being the case, it is not necessary to analyze whether a compelling public interest exists in release of the record.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB: ECW/cyh
[1] To the extent the record in question is a personnel or evaluation record, it must be disclosed to the person about whom the records are maintained or to that person's designated representative. A.C.A. § 25-19-1-5(c)(2) (Supp. 2003).
[2] Although purely advisory bodies may not be subject to the FOIA's open meetings requirements, the records of such entities are in most cases subject to public records requirements. See e.g., Ops. Att'y Gen.2003-170 and 2002-092. You have not posed any questions relative to the open meetings requirements with regard to the ad hoc committee and addressing any such issues is outside my statutory charge under A.C.A. §25-19-105(c)(3)(B).
[3] The reference to documents that merely "recite the reasons for the suspension" is a reference to documents which communicate the employer's decision to suspend the employee, in which the reasons for the suspension are detailed. Although, technically, such documents are not created prior to the suspension (but in fact contemporaneously with it), my predecessor has concluded, and I agree, that it would be "unwarranted and illogical to suggest that records supporting a suspension or termination should be classified differently than records reflecting the fact of the suspension or termination." See Ops. Att'y. Gen. 2001-249-299, fn 1. See also, Ops. Att'y. Gen. 2001-246 and opinions cited therein.